FILED 2026 FEB 27 PM2:54 USDC-FLMD-JAX

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. Case No. 3:26-cr- 28-MMH-MCR
21 U.S.C. § 331(k)
ADAM TAYLOR 21 U.S.C. § 331(a)
21 U.S.C. § 331(p)

# INFORMATION

The United States Attorney charges that at all relevant times:

## FDA Regulatory Framework

1. The United States Food and Drug Administration ("FDA") was the federal agency charged with the responsibility of protecting the health and safety of the public by enforcing the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"). Among other responsibilities, the FDA enforced laws and regulations regarding the manufacture and distribution of drugs, including prescription drugs, shipped or received in interstate commerce, as well as the labeling of such drugs.

2. The FDCA defined a "drug," to include "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man," "articles (other than food) intended to affect the structure or any function of the body of man," and "articles intended for use as a component of" a drug. 21 U.S.C. § 321(g)(1)(B), (C), and (D).

3. Whether a product was a "drug" under the FDCA depended on its intended use. 21 U.S.C. § 321(g)(1). Intended use referred to the objective intent of the

persons legally responsible for the labeling of the product and may be shown by such person's expressions, the design or composition of the article, or by the circumstances surrounding the distribution of the article. 21 C.F.R. § 201.128. This objective intent may also be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives. 21 C.F.R. § 201.128.

4. A "prescription drug" was any drug that because of its toxicity and other potential for harmful effects, or the collateral measures necessary for its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drugs. 21 U.S.C. § 353(b)(l)(A). A drug was also a prescription drug if the FDA required it to be administered under the supervision of a practitioner licensed by law to administer such drug as a condition of the FDA's approval of the drug. 21 U.S.C. § 353(b)(l)(B).

5. Under the FDCA, every person who engaged in the manufacture, preparation, propagation, compounding, or processing of a drug, in any establishment which he owns or operates in any State, was required to immediately register with the FDA. 21 U.S.C. § 360(b) and (c).

6. The terms "manufacture, preparation, propagation, compounding, or processing" included repackaging or otherwise changing the container, wrapper, or labeling of any drug package in furtherance of the distribution of the drug from the original place of manufacture to the person who makes final delivery or sale to the ultimate consumer or user. 21 U.S.C. § 360(a)(1).

7. The term "label" was defined as "a display of written, printed, or graphic matter upon the immediate container of any article." 21 U.S.C. § 321(k). The term "labeling," in turn, was defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m).

8. The FDCA prohibited the doing or causing of the following acts, among others:

   a. The introduction or delivery for introduction into interstate commerce of any drug that is misbranded. 21 U.S.C. § 331(a).

   b. Any act with respect to a drug if such act was done while such article was held for sale (whether or not the first sale) after shipment in interstate commerce and results in the drug being misbranded. 21 U.S.C. § 331(k).

   c. The failure to register in accordance with 21 U.S.C. § 360 any establishment in which the manufacture, preparation, propagation, compounding, or processing of a drug was performed. 21 U.S.C. § 331(p).

9. Under the FDCA, a drug was misbranded if, among other things:

   a. Its labeling was false or misleading in any particular. 21 U.S.C. § 352(a)(1);

   b. It was manufactured, prepared, propagated, compounded, or processed in an establishment in any State not duly registered with FDA. 21 U.S.C. § 352(o); and

   c. Its labeling failed to bear adequate directions for use, under which a layman could use a drug safely for the purposes for which it was intended. 21 U.S.C. § 352(f)(1) and 21 C.F.R. § 201.5.

10. Under the FDCA, a prescription drug was misbranded while held for sale, if it was dispensed without a prescription of a practitioner licensed by law to administer such drug. 21 U.S.C. § 353(b)(1).

Persons, Entities, and Products

11. Defendant ADAM TAYLOR was an individual living in the Middle District of Florida who owned and operated a business under the name AKT Labs.

12. TAYLOR owned and operated a website, www.aktlabs.shop ("Website"), that advertised and sold a variety of products to customers in the United States. The Website stated the following:

a. "At AKT Labs, we specialize in high-quality research peptides and compounds tailored for biomedical research. Our commitment to excellence ensures that you receive only the best products to support your scientific endeavors."

b. "All of our products are manufactured and packaged in the USA! We are committed to only providing the highest quality research peptides available on the market."

c. "Because our items are intended for laboratory research only, please do not email asking for advice on using these products."

d. "Highest Quality Weight Loss Peptides *for research purposes only."

13. TAYLOR also advertised products on Facebook using the URL for the Website, AKT Labs branding, and stated "Semaglutide 5mg - $150.00" "#1 Best Selling Weight loss Research Peptide."

14. Two of the products offered for sale by TAYLOR on the Website were "Semaglutide 5mg" and "Retatrutide 5mg."[1]

15. Retatrutide is not a component of any FDA-approved drug and has not been found safe and effective for any condition.

16. Semaglutide is an active pharmaceutical ingredient ("API") in FDA-approved glucagon-like peptide-1 ("GLP-1") receptor agonist drugs indicated to lower blood sugar and reduce risk of heart attack, stroke, and death in adults with type 2 diabetes and help adults and children with obesity and chronic weight management, commonly marketed under the proprietary names Ozempic, Rybelsus, and Wegovy. Ozempic, Rybelsus, and Wegovy are prescription drugs.

<u>Purchases / Search Warrant</u>

17. On or about January 3, 2025, TAYLOR sold a vial labeled "AKT Labs Semaglutide 5mg" to an undercover law enforcement officer ("UC-1"). TAYLOR did not ask UC-1 to provide a prescription and UC-1 did not provide a prescription to

---

[1] The description of Retatrutide 5mg on the Website included the following statements:

> "Product Usage: This PRODUCT IS INTENDED AS A RESEARCH CHEMICAL ONLY. This designation allows the use of research chemicals strictly for in vitro testing and laboratory experimentation only. All product information available on this website is for educational purposes only. Bodily introduction of any kind into humans or animals is strictly forbidden by law. This product should only be handled by licensed, qualified professionals. This product is not a drug, food, or cosmetic and may not be misbranded, misused or mislabeled as a drug, food or cosmetic."
>
> "Product Note: All products are shipped in lyophilized or powder form and must be reconstituted to a liquid for research and testing. We are unable to provide any dosing instructions, however all products should be considered pharmaceutical grade."

TAYLOR. TAYLOR informed UC-1 how to use the product for weight loss. The product was subsequently tested by the FDA National Forensic Chemistry Center ("FDA-FCC") and the substance was determined to be consistent with the presence of semaglutide.

18. On or about January 9, 2025, TAYLOR sold a vial labeled "AKT Labs Semaglutide 5mg" to an undercover law enforcement officer ("UC-2"). TAYLOR did not ask UC-2 to provide a prescription and UC-2 did not provide a prescription to TAYLOR. The product was subsequently tested by the FDA-FCC and the substance was determined to be consistent with the presence of semaglutide. TAYLOR had previously informed UC-2 by phone that semaglutide was the active ingredient in Ozempic but told UC-2 that legally TAYLOR could not provide dosage information. TAYLOR also stated that he had "to sell it as research purposes only that's the only legal way I'm able to sell it and give the prices that I give" and "the only way I'm able to sell it without a prescription, without a doctor, is to sell it as research purposes only but it is pharmaceutical grade."

19. On or about March 13, 2025, an undercover law enforcement officer ("UC-3") purchased "Retatrutide 5mg" from the Website. The Website did not require UC-3 to provide a prescription before the purchase and UC-3 did not provide a prescription at any time prior to receiving the product, which was shipped from Florida to a mailbox in Georgia. The product was subsequently tested by the FDA-FCC and the substance was determined to be consistent with the presence of semaglutide.

20. On or about May 16, 2025, TAYLOR sold a vial labeled "AKT Labs Semaglutide 5mg" to an undercover law enforcement officer ("UC-4"). TAYLOR did not ask UC-4 to provide a prescription and UC-4 did not provide a prescription to TAYLOR.

21. On May 27, 2025, a state search warrant was executed on TAYLOR's home, during which the following items were recovered: several AKT labels including for "Semaglutide 5mg" and "Retatrutide 5mg," empty glass vials, packaging material to seal glass vials, empty packages that had been shipped from China, marketing items for AKT Labs and AKT labels for vials, empty/not labeled vials consistent with the vials sold by TAYLOR, and a tool for sealing vials.

22. During an interview with TAYLOR on May 27, 2025, TAYLOR told law enforcement officers that he was getting the semaglutide from China.

23. A search of FDA databases revealed that neither TAYLOR, AKT Labs, nor TAYLOR's home are registered as a drug manufacturing facility with FDA.

**COUNT ONE**
**(Misbranding a Drug While Held for Sale)**

1. The preceding paragraphs of this Criminal Information are re-alleged and incorporated herein by reference as factual allegations.

2. On or about January 3, 2025, in the Middle District of Florida and elsewhere, the defendant,

ADAM TAYLOR,

did dispense and cause the dispensing of a prescription drug, namely Semaglutide 5mg, without a prescription of a practitioner licensed by law to administer such drug, an act which resulted in the drug to become misbranded while held for sale after shipment in interstate commerce.

All in violation of 21 U.S.C. §§ 331(k) and 333(a)(1).

**COUNT TWO**
**(Misbranding a Drug While Held for Sale)**

1. The preceding paragraphs of this Criminal Information are re-alleged and incorporated herein by reference as factual allegations.

2. On or about January 9, 2025, in the Middle District of Florida and elsewhere, the defendant,

ADAM TAYLOR,

did dispense and cause the dispensing of a prescription drug, namely Semaglutide 5mg, without a prescription of a practitioner licensed by law to administer such drug, an act which resulted in the drug to become misbranded while held for sale after shipment in interstate commerce.

All in violation of 21 U.S.C. §§ 331(k) and 333(a)(1).

**COUNT THREE**
**(Introducing a Misbranded Drug into Interstate Commerce)**

1. The preceding paragraphs of this Criminal Information are re-alleged and incorporated herein by reference as factual allegations.

2. On or about March 13, 2025, in the Middle District of Florida and elsewhere, the defendant,

ADAM TAYLOR,

did deliver for introduction, and caused the introduction and delivery for introduction, into interstate commerce, a drug, namely "Retatrutide 5mg," that was misbranded in at least one of the following ways:

a. the labeling was false or misleading in any particular in violation of 21 U.S.C. § 352(a)(1);

b. the labeling failed to bear adequate directions for use in violation of 21 U.S.C. § 352(f)(1); and

c. the drug was not manufactured, prepared, propagated, compounded, and processed in an establishment duly registered with the FDA as required by 21 U.S.C. § 360 in violation of 21 U.S.C. § 352(o).

All in violation of 21 U.S.C. §§ 331(a) and 333(a)(1).

**COUNT FOUR**
**(Misbranding a Drug While Held for Sale)**

1. The preceding paragraphs of this Criminal Information are re-alleged and incorporated herein by reference as factual allegations.

2. On or about May 16, 2025, in the Middle District of Florida and elsewhere, the defendant,

ADAM TAYLOR,

did dispense and cause the dispensing of a prescription drug, namely Semaglutide 5mg, without a prescription of a practitioner licensed by law to administer such drug, an act which resulted in the drug to become misbranded while held for sale after shipment in interstate commerce.

All in violation of 21 U.S.C. §§ 331(k) and 333(a)(1).

**COUNT FIVE**
**(Failure to Register as a Drug Manufacturer)**

1. The preceding paragraphs of this Criminal Information are re-alleged and incorporated herein by reference as factual allegations.

2. On or about May 26, 2025, in the Middle District of Florida and elsewhere, the defendant,

ADAM TAYLOR,

did engage in the manufacturing, preparing, propagating, compounding, and processing of a drug in an establishment he owned and operated in the State of Florida without registering with the FDA as required under 21 U.S.C. § 360.

All in violation of 21 U.S.C. §§ 331(p) and 333(a)(1).

GREGORY W. KEHOE
United States Attorney

By: ______________________
LAURA COFER TAYLOR
Assistant United States Attorney

By: ______________________
MICHAEL J. COOLICAN
Assistant United States Attorney
Chief, Jacksonville Division