FILED IN OPEN COURT
JACKSONVILLE, FLORIDA
11/18/24
U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 3:26-cr-28-BJD-PDB

ADAM TAYLOR

# PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, and the defendant, ADAM TAYLOR, and the attorney for the defendant, Kathryn Sheldon, mutually agree as follows:

## A. Particularized Terms

1. Count(s) Pleading To

The defendant shall enter pleas of guilty to Count Three of the Information. Count Three charges the defendant with introducing a misbranded drug into interstate commerce, in violation of 21 U.S.C. §§ 331(a) and 333(a)(1).

2. Maximum Penalties

Count Three carries a maximum penalty of 1 year of imprisonment, a fine of not more than $100,000, or both a term of imprisonment and a fine, a term of supervised release of not more than 1 year, and a mandatory special assessment of $25, said special assessment to be due on the date of sentencing. A violation of the terms and conditions of supervised release carries a maximum sentence of not more

than 1 year of imprisonment as well as the possibility of an additional term of supervised release.

3. Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count Three are:

First: The products at issue were drugs;

Second: The Defendant did or caused the drugs to be introduced or delivered for introduction into interstate commerce; and

Third: The drugs were "misbranded" or "adulterated" at the time they were introduced or delivered for introduction into interstate commerce.

4. Counts Dismissed

At the time of sentencing, the remaining count(s) against the defendant, Counts One, Two, Four, and Five of the Information, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the

Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

**B. Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.

The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background,

character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank

records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant

questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 27 day of October 2026.

GREGORY W. KEHOE
United States Attorney

ADAM TAYLOR
Defendant

LAURA COFER TAYLOR
Assistant United States Attorney

KATHRYN SHELDON
Attorney for Defendant

MICHAEL J. COOLICAN
Assistant United States Attorney
Chief, Jacksonville Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 3:26-cr-28-BJD-PDB

ADAM TAYLOR

**PERSONALIZATION OF ELEMENTS**

**As to Count Three:**

1. Was the product at issue – specifically, semaglutide that inaccurately was labeled as ~~retraglutide~~ Retatrutide – a drug? In other words, did you intend the substance to be used in the cure, mitigation, treatment, and prevention of disease in man?

JCJ KES AT

2. On or about March 13, 2025, did you cause the semaglutide to be introduced or delivered for introduction into interstate commerce, including by mailing the drug from Florida to Georgia?

3 ~~2~~. Was the drug misbranded at the time you introduced or delivered it for introduction into interstate commerce, specifically, was its labeling false or misleading, including by the representation that the drug was ~~retraglutide~~ Retatrutide and not semaglutide?

KES AT
JCJ

Defendant's Initials AT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 3:26-cr-28-BJD-PDB

ADAM TAYLOR

# FACTUAL BASIS

## I. Background

The United States Food and Drug Administration ("FDA") was the federal agency charged with the responsibility of protecting the health and safety of the public by enforcing the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"). Among other responsibilities, the FDA enforced laws and regulations regarding the manufacture and distribution of drugs, including prescription drugs, shipped or received in interstate commerce, as well as the labeling of such drugs.

The FDCA defined a "drug," to include "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man," "articles (other than food) intended to affect the structure or any function of the body of man," and "articles intended for use as a component of" a drug. 21 U.S.C. § 321(g)(1)(B), (C), and (D).

Whether a product was a "drug" under the FDCA depended on its intended use. 21 U.S.C. § 321(g)(1). Intended use referred to the objective intent of the persons legally responsible for the labeling of the product and may be shown by such person's

Defendant's Initials AT

expressions, the design or composition of the article, or by the circumstances surrounding the distribution of the article. 21 C.F.R. § 201.128. This objective intent may also be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives. 21 C.F.R. § 201.128.

A "prescription drug" was any drug that because of its toxicity and other potential for harmful effects, or the collateral measures necessary for its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drugs. 21 U.S.C. § 353(b)(1)(A). A drug was also a prescription drug if the FDA required it to be administered under the supervision of a practitioner licensed by law to administer such drug as a condition of the FDA's approval of the drug. 21 U.S.C. § 353(b)(1)(B).

Under the FDCA, every person who engaged in the manufacture, preparation, propagation, compounding, or processing of a drug, in any establishment which he owns or operates in any State, was required to immediately register with the FDA. 21 U.S.C. § 360(b) and (c).

The terms "manufacture, preparation, propagation, compounding, or processing" included repackaging or otherwise changing the container, wrapper, or labeling of any drug package in furtherance of the distribution of the drug from the original place of manufacture to the person who makes final delivery or sale to the ultimate consumer or user. 21 U.S.C. § 360(a)(1).

The term "label" was defined as "a display of written, printed, or graphic matter upon the immediate container of any article." 21 U.S.C. § 321(k). The term "labeling,"

in turn, was defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m).

Semaglutide is an active pharmaceutical ingredient ("API") in FDA-approved glucagon-like peptide-1 ("GLP-1") receptor agonist drugs indicated to lower blood sugar and reduce risk of heart attack, stroke, and death in adults with type 2 diabetes and help adults and children with obesity and chronic weight management, commonly marketed under the proprietary names Ozempic, Rybelsus, and Wegovy. Ozempic, Rybelsus, and Wegovy are prescription drugs. Retatrutide is not a component of any FDA-approved drug and has not been found safe and effective for any condition.

## II. TAYLOR's Conduct

Defendant ADAM TAYLOR was an individual living in the Middle District of Florida who owned and operated a business under the name AKT Labs. TAYLOR owned and operated a website, www.aktlabs.shop ("Website"), that advertised and sold a variety of products to customers in the United States. The Website stated the following:

a. "At AKT Labs, we specialize in high-quality research peptides and compounds tailored for biomedical research. Our commitment to excellence ensures that you receive only the best products to support your scientific endeavors."

b. "All of our products are manufactured and packaged in the USA! We are committed to only providing the highest quality research peptides available on the market."

c. "Because our items are intended for laboratory research only, please do not email asking for advice on using these products."

d. “Highest Quality Weight Loss Peptides *for research purposes only.”

In January 2025, Adam TAYLOR posted an advertisement on Facebook for semaglutide 5mg for $150.00 per vial using the URL for the Website, AKT Labs branding, and stated “Semaglutide 5mg - $150.00” “#1 Best Selling Weight loss Research Peptide.” TAYLOR was not licensed by law to prescribe semaglutide or any other drug.

On January 3, 2025, TAYLOR sold a vial labeled “AKT Labs Semaglutide 5mg” to an undercover law enforcement officer (“UC-1”). TAYLOR did not ask UC-1 to provide a prescription and UC-1 did not provide a prescription to TAYLOR. TAYLOR informed UC-1 how to use the product for weight loss. The product was subsequently tested by the FDA National Forensic Chemistry Center (“FDA-FCC”) and the substance was determined to be consistent with the presence of semaglutide.

On January 9, 2025, TAYLOR sold a vial labeled “AKT Labs Semaglutide 5mg” to an undercover law enforcement officer (“UC-2”). TAYLOR did not ask UC-2 to provide a prescription and UC-2 did not provide a prescription to TAYLOR. The product was subsequently tested by the FDA-FCC and the substance was determined to be consistent with the presence of semaglutide. TAYLOR had previously informed UC-2 by phone that semaglutide was the active ingredient in Ozempic but told UC-2 that legally TAYLOR could not provide dosage information. TAYLOR also stated that he had “to sell it as research purposes only that’s the only legal way I’m able to sell it and give the prices that I give” and “the only way I’m able to sell it without a

prescription, without a doctor, is to sell it as research purposes only but it is pharmaceutical grade."

On or about March 13, 2025, an undercover law enforcement officer ("UC-3") purchased "Retatrutide 5mg" from the Website. The Website did not require UC-3 to provide a prescription before the purchase and UC-3 did not provide a prescription at any time prior to receiving the product, which was shipped by TAYLOR from Florida to a mailbox in Georgia. TAYLOR intended for the product to be used in the cure, mitigation, treatment, and prevention of disease in man. The product was subsequently tested by the FDA-FCC and the substance was determined to be consistent with the presence of semaglutide.

On or about May 16, 2025, TAYLOR sold a vial labeled "AKT Labs Semaglutide 5mg" to an undercover law enforcement officer ("UC-4"). TAYLOR did not ask UC-4 to provide a prescription and UC-4 did not provide a prescription to TAYLOR.

On May 27, 2025, a state search warrant was executed on TAYLOR's home, during which the following items were recovered: several AKT labels including for "Semaglutide 5mg" and "Retatrutide 5mg," empty glass vials, packaging material to seal glass vials, empty packages that had been shipped from China, marketing items for AKT Labs and AKT labels for vials, empty/not labeled vials consistent with the vials sold by TAYLOR, and a tool for sealing vials. During an interview with TAYLOR on May 27, 2025, TAYLOR told law enforcement officers that he was getting the semaglutide from China.

Defendant's Initials AT

A search of FDA databases revealed that neither TAYLOR, AKT Labs, nor TAYLOR's home are registered as a drug manufacturing facility with FDA.